In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-3965

JINLONG CHEN,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A70-885-665

ARGUED JULY 6, 2005—DECIDED AUGUST 25, 2005

Before COFFEY, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jinlong Chen claims that he was detained and abused in his native China by police who wanted him to testify against the pastor of his underground church. This detention and abuse are not mentioned in Chen's initial asylum application, which he filed soon after arriving in the United States in 1993. Chen blames the omission on an agency that he says prepared the application without asking him about his history. The immigration judge ("IJ") did not credit this explanation and, finding other aspects of Chen's testimony also implausible, denied Chen's requests for asylum, withholding of removal, and relief under the United Nations Convention

Against Torture. We conclude that the reasons the IJ gave for his decision are not supported by substantial evidence, and we therefore grant Chen's petition for review.

Chen says that in January 1992, a classmate at his high school in Changle, Fujian province, introduced him to Guoping Lin, the pastor of an unauthorized Christian church. Chen soon joined the church, and he and his classmate began proselytizing at their school. School officials notified the police, who arrested the two students. Over the next six days, the police repeatedly beat Chen (particularly in the face) and withheld food to force him to implicate Lin for the crime of "spreading an evil cult." Chen finally relented, signed a statement, and was released two days later. He was told to report to the police daily until Lin's trial ten days later, at which he was to testify. Unwilling to go through with testifying, Chen with his family's assistance arranged to escape to the United States on a smuggler's boat, paying $1,000 to the smuggler up-front and promising him another $24,000.

Chen arrived in New York without inspection on April 20, 1993. There, he saw an advertisement in a Chinese-language newspaper from an agency called "Xinlong" offering help applying for asylum. He contacted the agency and told them he was a Christian having problems with the Chinese government, but gave them little information beyond that. The agency then prepared an asylum application, which included a three-paragraph typewritten declaration in English describing Chen's participation in a "secret Christian fellowship" at his school and various actions taken against him by school authorities, such as confiscating his religious books and refusing to issue him a diploma upon graduation. The declaration made no reference either to Pastor Lin or to any episode of detention or abuse by police. Chen says that he signed the application without knowing its contents.

The application was filed, but nothing came of it until 2001, when Chen was placed in removal proceedings. The counsel Chen retained at that time prepared a new asylum application, containing Chen's own handwritten affidavit (in Chinese, with English translation) describing his relationship with Pastor Lin and his encounter with the police. At a hearing in May 2003, Chen testified concerning the events described in his affidavit and submitted corroborating letters from Pastor Lin (who ended up serving a six-year sentence for his unauthorized ministry) and Chen's high-school classmate (who spent eighteen months in a reeducation camp). He also claimed that the police were still asking his parents about his whereabouts, and expressed fear that if he returned to China he would be arrested and prosecuted both for his proselytizing activities and for obstructing justice by failing to testify against Pastor Lin.

The IJ found Chen's testimony not credible. He gave four reasons: (1) the abuse Chen claimed to have suffered was inconsistent with his account of what he did after being released (walking home three kilometers; not going to the doctor), and was unsupported by photographic or other evidence; (2) it seemed unlikely that Chen and his parents (who were indigent farmers) would be able in the space of a few days to arrange his smuggling and pay an up-front fee of $1,000; (3) Chen's central story of detention and abuse was not contained in his first asylum application; and (4) it seemed unlikely that the police would still care to pursue him after ten years for something he did when still in high school. The IJ therefore denied all of Chen's requested relief. The Board of Immigration Appeals affirmed in a one-paragraph decision, finding the IJ's credibility finding not clearly erroneous.

Chen now contends that none of the IJ's stated reasons for finding him not credible is supported by substantial evidence. *See Huang v. Gonzales*, 403 F.3d 945, 948

(7th Cir. 2005). Although § 101(a)(3) of the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 302, 303, *codified at* 8 U.S.C. § 1158(b)(1)(B), changed the standards governing credibility determinations in asylum cases, our review in this case is unaffected because Chen's application was filed prior to the effective date of that amendment, which is not retroactive, *see* REAL ID Act § 101(h)(2), 119 Stat. at 305; *Olujoke v. Gonzales*, 411 F.3d 16, 22 n.4 (1st Cir. 2005).

We agree that there is not substantial evidence supporting the IJ's reasons for finding Chen not credible. First, the IJ found it implausible that Chen would be able to walk the three kilometers home from the detention center after being, as Chen described it, "tortured beyond recognition." But it is unclear how the facial disfigurement he claimed to have suffered would impair his ability to walk, nor is it clear that three kilometers is a particularly onerous distance. The IJ thought it unlikely that Chen would not have visited a doctor after such treatment, but he did not address Chen's explanation that his injuries were all external and sufficiently treatable at home. The IJ insisted that, besides Chen's testimony, there was "no other evidence attesting to his condition" after his beatings. But the nature of his injuries was corroborated in the letter of his classmate, which described meeting Chen briefly on the second day of their detention and seeing that he "had been tortured so brutally that I could barely recognize him right away," that there was "a big blue bump on his forehead," and that "[t]here were many cuts and bruises on his body." These statements are consistent with Chen's own testimony about his injuries ("[O]ne of the policemen pushed my head against the wall and cause [sic] a big bruise on my head and they also used different devices like a club, a police club to beat me.").

Second, the IJ found it implausible that Chen would be able, in the nine days between his release from detention

and his escape from the country, to "make arrangements with a smuggler and have his poor farmer parents get together with relatives to pay $1,000 and make those arrangements to come all the way to the United States, which involved a couple of vessels and movements to reach his destination." This description exaggerates the complexity of Chen's voyage—the two boats Chen described were a "big boat" traveling directly from China to the United States, and a "small fishing boat" used to ferry him from the shore to the big boat. This itinerary appears no more complicated than any other smuggling operation, and the IJ does not explain why he thought it would take more than nine days to arrange. Nor does the IJ indicate how long he expects it should take for a rural Chinese family to pool together $1,000 to pay for such an arrangement. Chen is justified in describing the IJ's rejection of these claims as conjectural and speculative. *See Korniejew v. Ashcroft*, 371 F.3d 377, 383 (7th Cir. 2004) (reviewing court will not uphold adverse credibility determinations based on speculation or conjecture rather than on evidence in the record) (citing *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)); *see also Huang*, 403 F.3d at 949.

The third reason the IJ discredited Chen's story was its absence from his original 1993 asylum application. Significant discrepancies among different versions of an alien's statement are generally a permissible basis for an adverse credibility decision. *See, e.g.*, *Capric v. Ashcroft*, 355 F.3d 1075, 1089-90 (7th Cir. 2004). Nevertheless, we and other courts have noted that initial asylum applications should not always be considered completely reliable, particularly when filled out without the assistance of counsel. *See Pop v. INS*, 270 F.3d 527, 532 (7th Cir. 2001) ("Asylum forms are frequently completed without the advice of counsel by poor, illiterate people who do not speak English."); *see also Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) (recognizing that "preparers, whether

lawyers or non-lawyers, are not always scrupulous" and that "[i]nconsistencies due to an unscrupulous preparer, without other evidence of dishonesty . . . do not provide a specific and cogent basis for an adverse credibility finding"); *cf. Canaveral Toban v. Ashcroft*, 385 F.3d 40, 46 (1st Cir. 2004) (finding no prejudice caused by the filing of a fraudulent asylum application by a sham attorney, given that the IJ allowed applicant to submit a new application and did not consider earlier fraudulent application decisive on issue of credibility).

Chen insisted that the omissions in the earlier application were caused by a preparer who did not adequately inquire into his circumstances. The IJ rejected that explanation, giving three reasons: first, there was no indication on the form itself that anyone had assisted with its preparation; second, Chen had no evidence of the agency's existence; and third, "the application contains information that only the respondent could have provided to anyone who filled out this application, and the respondent has acknowledged that except for two statements, the information is correct."

The first two reasons are insubstantial. If the agency that prepared the application was as unscrupulous as Chen's story suggests—soliciting no more than a few details from the applicant, more or less inventing a story around those details, and having the applicant sign the story without reading it to him first—it is not surprising that it would not go to the trouble of putting its own name on the form. Nor is it surprising that evidence of its existence would be hard to find ten years later.

But the existence or non-existence of the agency is not really the issue. It is obvious that *someone* assisted Chen with the application—the form and statement are entirely in English, and there is no suggestion that Chen knew any English when he arrived in the United States. The relevant question is whether the person

who prepared the statement did so with or without significant contribution from Chen. If Chen was the primary source of the narrative, the IJ reasoned, then one would expect it to refer to the events involving Pastor Lin, and the absence of any such reference would suggest that those events did not actually happen.

The IJ believed that Chen was the primary source for the narrative because it contained information that only Chen could have provided and, except for the omission of the story of Pastor Lin, it was essentially "the same as in [Chen's] testimony." But the application's narrative and Chen's testimony are in fact quite different. The application speaks of Chen's joining a "secret Christian fellowship" at his high school; but the church he later described was based not at his school but at Pastor Lin's house. The application recounts the school's efforts (including "disseminat[ing] a circular") to discourage students from becoming Christians; but Chen testified only that the school officials reported his proselytizing to the police. The application says that the school authorities "went to my dormitory and took away my religious books"; but at his hearing Chen explicitly denied that school authorities had ever taken away his books. The application asserts that school officials "even refused to issue me a diploma" upon graduation; according to his testimony, he was dismissed by the school before he was able to graduate. The only information particular to Chen in the statement is that he was a student at Changle High School—one of the few pieces of information that he testified giving to the agency ("I told them I was a student at Changle Number One High School and I'm a Christian and just those basic informations [sic]."). The IJ's conclusion that the original narrative could not have been drafted without significant input by Chen thus lacks substantial support.

That leaves the fourth of the IJ's stated reasons for finding Chen not credible—the unlikelihood that the police

would still be interested in pursuing him. The IJ explained: "It seems most unlikely that the authorities would want to again incarcerate [Chen] who they released in 1993 after he gave a confession implicating the pastor simply because he failed to show up for the pastor's hearing ten years after these events occurred. It seems most unlikely to me. In addition, this was an event which occurred when the respondent was a high school student. He is now 28 years of age." The IJ appears to be saying that Chinese authorities will be indifferent to Chen's infraction because of the passage of time and his relative youth, but he points to no evidence supporting that conclusion. *Cf. Lian v. Ashcroft*, 379 F.3d 457, 459-60 (7th Cir. 2004) (observing that "the age of adult criminal responsibility in China is only 16"). In any event, such a conclusion has no bearing on the credibility of Chen's account of past persecution, but concerns only whether Chen has a well-founded fear of future persecution —a question the IJ did not explicitly address. *See* 8 C.F.R. § 208.13(b)(1); *Diallo v. Ashcroft*, 381 F.3d 687, 697 (7th Cir. 2004) (once past persecution has been shown, the burden falls to the government to show that the applicant's fear of future persecution is not well-founded).

In sum, the IJ provided several reasons for discrediting Chen's testimony, but he did not identify substantial support in the record for any of them. Although the standard of review for an IJ's credibility determination is highly deferential, *see Nigussie v. Ashcroft*, 383 F.3d 531, 534 (7th Cir. 2004), we cannot uphold the IJ's decision in this case, even under that deferential standard, *see id.* (credibility determinations must be "well-reasoned" to warrant deference). We therefore GRANT Chen's petition for review, VACATE his order of removal, and REMAND the case for further proceedings.

A true Copy:

    Teste:

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-25-05