UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 19, 2005
Decided December 21, 2005

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-1841

ILIYA N. IVANOV,
   *Petitioner*,

  *v.*

ALBERTO R. GONZALES,
Attorney General of the United
States of America,
   *Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals

No. A78-751-191

**O R D E R**

  Bulgarian native Iliya Ivanov applied for asylum, alleging that he faced persecution because he is an ethnic Rom, commonly known as a Gypsy. After the Immigration Judge ("IJ") denied his petition for asylum, withholding of removal, and relief under the Convention Against Torture, Ivanov appealed and the Board of Immigration Appeals ("BIA") affirmed. Ivanov now petitions for review of the BIA's decision. Because we find that the IJ made flawed credibility and corroboration determinations, we grant the petition for review and remand for further proceedings.

I.

Ivanov, the only witness at his removal hearing, testified that in 1991, he opened his own vegetable stand at an outdoor market in Sofia, Bulgaria. Three years later, neo-Nazi gang members demanded that Ivanov pay them to allow him to do business on their turf. Ivanov could not afford to pay, so he went to the police, who did nothing. The gang members returned, burned Ivanov's produce, beat him, and threatened to murder him. According to Ivanov, they called him a Gypsy as they attacked him and they attacked only other Gypsies and Turkish minorities. Ivanov returned to his home village of Petrich and remained there for the next four months, until he obtained a visa for the United States to escape his neo-Nazi persecutors.

After a three and a half year stay in the United States, Ivanov returned to Bulgaria in 1997 when his wife assured him that life was improving for Gypsies there. Ivanov resumed his old business until 2000, when the same group of assailants from 1994 attacked him again, leaving him unconscious. He went to the police station, but an officer threw him out saying, "Gypsies simply don't know what they want, they just get drunk and just get into fights, and then they look for police help."

Two weeks after the first assault, the gang members attacked Ivanov again, locking him in the trunk of their car, and driving him to an isolated area where they severely beat him. Ivanov awoke in a hospital emergency room and spent a day and a half there recovering. Afterwards, he hid in his wife's village until he obtained a visa for Mexico, left Bulgaria and ultimately was caught illegally entering the United States in 2000. Ivanov testified that he fears returning to Bulgaria because the gang members are bodyguards for influential government officials, and they will work together with the police to find and kill him. Apart from his testimony, Ivanov submitted country reports that state that both police and private bodyguards use excessive force against the Roma in Bulgaria.

The IJ denied Ivanov's application for asylum on three grounds. First, Ivanov failed to prove he is a Rom. The IJ asked him: "[i]s there something about you, like for example, there are certain African people who have markings on their face that are like tattoos or scars, tribal marks. Do you have those kinds of marks?" Ivanov informed the IJ that ethnic Gypsies like him live in different neighborhoods, speak a different dialect, and that there are school records that note his Romani ethnicity. Unconvinced, the IJ replied,"[y]ou look Bulgarian to me" and "I can't even tell if you're Roma." The IJ made no explicit credibility finding on Ivanov's description of the attributes of his ethnicity, but concluded generally that Ivanov "failed to submit persuasive evidence of his Roma or Gypsy ethnicity." Second, the IJ found that the attackers were motivated by a desire to take Ivanov's money, not

by his ethnicity. Third, the IJ did not credit Ivanov's testimony that his tormentors were "bodyguards" for "influential government officials." The IJ concluded that Ivanov was simply "embellishing" to establish government involvement where there was none. The BIA affirmed, agreeing that Ivanov failed to establish persecution on one of the statutorily protected grounds, but offering no additional rationale of its own.

## II.

Ivanov makes two arguments on appeal. First, Ivanov argues that the IJ erred in finding he failed to prove he is a Rom. Second, Ivanov contends that the IJ erred in concluding that only a desire for money motivated Ivanov's persecutors. In cases where the BIA's decision merely supplements the IJ's opinion, the latter opinion as supplemented by the BIA's decision becomes the basis for review. *Brucaj v. Ashcroft*, 381 F.3d 602, 606 (7th Cir. 2004). We review the BIA's denial of a petition for asylum under the substantial evidence standard; however, questions of law are reviewed de novo. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004). Ivanov contends that in finding that he failed to prove he is a Rom, the IJ wrongly defined "membership in a social group" as requiring a proof of a physical characteristic, and improperly required Ivanov to corroborate his testimony that he is a Rom. We have accepted the BIA's interpretation that "membership in a social group" means persons who share a common, immutable characteristic. *Lwin v. INS*, 144 F.3d 505, 512 (7th Cir. 1998). "Immutable" is not confined to physical traits only, but instead includes anything that is beyond the power of an individual to change or is so fundamental to individual identity or conscience that it ought not be required to be changed. *See, e.g., Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 672 (7th Cir. 2005) (noting characteristics that define social groups may include education, manner of speech, or profession). The IJ did not explicitly define "membership in a social group" as requiring a physical characteristic, but he appeared to demand physical corroboration of Ivanov's claim of Romani ethnicity.

This brings us to Ivanov's second contention, that the IJ improperly found that he "failed to submit persuasive evidence of his Roma or Gypsy ethnicity." If by this the IJ meant that he simply disbelieved Ivanov's explanation of why he is a Rom, he needed to say so explicitly and provide reasons why. *See Soumahoro v. Gonzales,* 415 F.3d 732, 736 (7th Cir. 2005) (recognizing that "passing expressions of disbelief do not adequately substitute for an adverse credibility finding").

If, as is more likely, the IJ meant Ivanov had not corroborated his claim of Romani ethnicity with physical or other evidence, he improperly called for corroboration. The recently enacted REAL ID Act of 2005, which changes the standards governing credibility determinations, does not affect Ivanov's case because he filed his application prior to the effective date of that amendment. *See*

Pub. L. No. 109-13, 119 Stat. 231 § 101(h)(2) (providing that the REAL ID Act takes effect on the day of the enactment, which was May 11, 2005); *Chen v. Gonzalez*, 420 F.3d 707, 709 (7th Cir. 2005). For Ivanov's case the law is that an IJ may not require corroboration unless he: (1) makes an explicit credibility finding; (2) explains why it is reasonable to require corroboration; and (3) explains why the applicant's reasons for not producing that corroboration are inadequate. *See Goncharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004). In not making an independent, explicit credibility assessment of Ivanov's testimony that he is a Rom before requiring corroboration, the IJ erred. *See Iao v. Gonzalez*, 400 F.3d 530, 534 (7th Cir. 2005). Moreover, the IJ did not explain why it would be reasonable to require Ivanov to produce physical corroboration of his ethnicity. Finally, the IJ missed the third step in *Goncharova* by failing to address the adequacy of Ivanov's explanation that Bulgaria does not issue certificates of Romani ethnicity.

Ivanov also challenges the IJ's separate ruling that the gang members did not persecute him "on account of" his Romani ethnicity, but rather because they desired to extort money from his business. The phrase "on account of" does not mean *solely* on account of one of the five protected categories; persecutors may have a mixed motive. *Mohideen v. Gonzalez*, 416 F.3d 567, 570-71 (7th Cir. 2005); *Girma v. INS*, 283 F.3d 664, 667 (5th Cir. 2002); *Singh v. Ilchert*, 63 F.3d 1501, 1509-10 (9th Cir. 1995). And, if an applicant presents evidence of a mixed motive, the IJ or BIA must provide a reason for relying on one motive rather than the other. *See Mohideen*, 416 F.3d at 571.

Ivanov presented evidence of a mixed motive. He testified that the gang attacked only Gypsy and Turkish minorities, and in his asylum application he noted that the gang members called him a Gypsy as they attacked him. The country reports that the IJ found plausible with respect to the treatment of the Roma, state that Gypsies are among the poorest in Bulgarian society. This creates the possibility that ethnicity, as much as if not more than money, motivated the attackers. The IJ's failure to acknowledge the possibility of mixed motives or to explain why he believed one motive over the other deprived Ivanov of a reasoned analysis of the evidence he presented. *See Mohideen*, 416 F.3d at 571 (remanding for BIA's failure to apply "mixed motive" doctrine correctly).

Finally, although Ivanov has not challenged the IJ's conclusion that Ivanov "embellished" his testimony that the gang members were tied to influential government officials, in the interests of justice we note that the finding is erroneous and may be properly addressed on remand. *See Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999) (explaining that court has right to reach forfeited arguments in interests of justice). Persecution does require an element of government action or inaction, *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001), but the IJ's conclusion that Ivanov "embellished" his testimony is an adverse credibility determination that

was not supported by specific and cogent reasons. *See Uwase v. Ashcroft,* 349 F.3d 1039, 1041 (7th Cir. 2003). The IJ's reasons for finding Ivanov's testimony "embellished" are: (1) Ivanov characterized the gang in different ways, as neo-Nazi's, gangster fighters, bandits, and bodyguards for influential government people; and (2) Ivanov was unable to identify the gang members or the influential people for whom they work. The IJ's first stated reason implies that he found Ivanov's word choices for his assailants too varied to be believed, but minor inconsistencies do not constitute a valid basis for denying an asylum applicant's claim. *See Iao,* 400 F.3d at 532 (regarding IJ's decision as unreasoned in part because IJ relied on trivial inconsistencies in asylum applicant's testimony). In any event, this Court has cautioned IJ's to make clear credibility findings that do not leave the reviewing court to speculate about why such decisions were made. *Id.* at 534. The IJ's second reason appears to be an unreasonable demand for corroborating details about his persecutors' identities. *See Ladha v. INS,* 215 F.3d 889, 899-900 (9th Cir. 2000) (noting persecutors are hardly likely to provide their victims with affidavits); *Korniejew v. Ashcroft,* 371 F.3d 377, 387 (7th Cir. 2004) ("We trust that IJs will not continue to insist on corroborating evidence when common sense and institutional experience suggest that there is none to be had."). Furthermore, the IJ did not address Ivanov's testimony that the police failed to protect him because he is a Gypsy, and police inaction itself may provide the necessary government nexus to establish persecution. *See Galina v. INS,* 213 F.3d 955, 958 (7th Cir. 2000).

The IJ's improper credibility determinations cannot be excused as harmless error because the IJ made no finding about whether the gang's attacks rose to the level of persecution, *see Singh v. Gonzalez,* 404 F.3d 1024, 1028 (7th Cir. 2005) (observing harmless error analysis applies to immigration cases), and we refrain from determining persecution in the first instance. *See INS v. Ventura,* 537 U.S. 12, 16-17 (2002); *Kay v. Ashcroft,* 387 F.3d 664, 677 (7th Cir. 2004).

The petition for review is therefore GRANTED and the case is REMANDED to the BIA for further proceedings.