# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1937

HIWOT G. TOLOSA,

*Petitioner*,

v.

JOHN ASHCROFT, Attorney General
of the United States,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77-837-139

———————

ARGUED MAY 20, 2004—DECIDED OCTOBER 4, 2004

———————

Before COFFEY, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Hiwot Tolosa, an Ethiopian citizen of Oromo descent, petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") denying her application for asylum and withholding of removal. Tolosa and her sister left Ethiopia after their father had fled to Kenya and their mother, of Eritrean descent, had been deported to Eritrea. Because the immigration judge ("IJ") erroneously discredited Tolosa and failed to acknowledge evidence in the record supporting her claim, we remand for further proceedings.

## I.

Tolosa arrived in the United States in August 1999. That December she applied for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture on the basis of treatment she and her family had endured in Ethiopia on account of their Oromo ethnicity. Although Tolosa's mother is Eritrean, her father is Oromo and so she and her siblings are considered Oromo. Oromos make up approximately 40% of the population of Ethiopia, but have historically been politically marginalized, and the Ethiopian government has rejected their attempts for independence. Tolosa conceded removability in response to a notice to appear from the Immigration and Naturalization Service, and in September 2000 the IJ held a hearing to evaluate Tolosa's claim.

At the hearing, Tolosa explained that her father had served as a colonel in the Ethiopian army before fleeing the country in early 1994. His military service had begun under emperor Haile Selassie, whose reign lasted from 1941 until 1974. Tolosa's father continued in the military until he was forced to leave in 1986 or 1987, during the final years of the 14-year rule of Marxist dictator Colonel Mengistu Haile Mariam. Tolosa testified that her father was forced out of the military because he is Oromo.

In 1991, the Ethiopian People's Revolutionary Democratic Front ("EPRDF") ousted Mengistu. Tolosa testified that early one morning the following year, armed EPRDF soldiers arrived at their home and took her father away for what they said would be fifteen minutes of questioning. He did not return until two months later. A year later, he was again taken away for questioning, and this time was detained for six months. He was not charged with a crime on either occasion and apparently did not tell his family why he was detained or how he was treated. Both times upon his release, security forces monitored him and his whereabouts.

After being released the second time, he fled to Kenya. Tolosa presumed that the reason the government monitored and detained her father was because he is Oromo.

After the father's departure, EPRDF soldiers watched the family and repeatedly detained and interrogated them about his whereabouts. Tolosa testified that during these interrogations soldiers beat and slapped her, and that the first time it happened she was knocked nearly unconscious and feared that she had been blinded. The interrogations continued intermittently for about six months, until July 1998 when Tolosa's Eritrean mother was taken from their home and deported to Eritrea. This occurred as part of the border conflict between Ethiopia and Eritrea, at a time when many Ethiopian Eritreans were rounded up and deported. No one has heard from her since.

The family's trauma continued. Several months after Tolosa's mother was deported, a local government security officer forced his way into the home in the middle of the night and raped Tolosa's sister and stole her jewelry while other officers restrained the rest of the family in an adjacent room.

Shortly thereafter Tolosa and her sister sold all of their belongings and fled to Somalia, where they soon boarded a boat to Saudi Arabia. In Saudi Arabia, Tolosa's uncle helped her obtain work as a nanny for a wealthy family. Tolosa accompanied the family on their vacation to Canada and Buffalo, NY, where she hid and, with a friend's help, proceeded on to Maryland. Some time later, a cousin, Tekle Walde Gabriel, bought Tolosa a train ticket to join him in Chicago.

Gabriel testified at the hearing and corroborated Tolosa's story. Gabriel, who is Eritrean, testified that Tolosa's father "sympathized with the Oromo's right for self preservation" and their "quest for equity in the political and economic activities in the country." Gabriel explained that the EPRDF was hostile towards Ethiopians who were suspected to be

Oromos and their desire for independence; according to Gabriel, the government would have perceived Tolosa's father, a former military member, to be particularly dangerous. At the hearing the government suggested that Tolosa's father's arrests and detentions may have been due to his role in perpetuating human rights abuses under Mengistu's regime and not his Oromo ethnicity. Gabriel rejected such a scenario, explaining that unlike Tolosa's father, those suspected of abuses were members of the "Derg" political party in power during Mengistu's regime. Additionally, Tolosa's father's arrest coincided with what Gabriel described as the EPRDF government's campaign to harass and arrest Oromo intellectuals and leaders. Gabriel believed that Tolosa's father supported the Oromo cause, but could not say whether he belonged to the Oromo Liberation Front ("OLF"), the political opposition group that seeks "self-determination" for the Oromos.

After considering Tolosa's evidence, the IJ found her ineligible for asylum or withholding of removal. The IJ first noted that Tolosa did "not advance[ ] a completely credible" claim for two reasons: first, her asylum application failed to include her story about the interrogations and beating she endured after her father's departure to Kenya, and second, she testified inconsistently at the hearing about the soldiers who took her father into custody, at times misidentifying them as members of the "EPLF," the acronym for the Eritrean People's Liberation Front, another political organization unrelated to Tolosa's claim. Leaving aside his concerns about Tolosa's credibility, however, the IJ concluded that she was not entitled to asylum because she had not established past persecution or a well-founded fear of future persecution on account of her Oromo heritage. Finally, the IJ denied Tolosa's request for withholding of removal because she had necessarily failed to meet the heavier burden of showing it was more likely than not that she would be persecuted if returned to Ethiopia. The BIA affirmed the IJ's decision without opinion.

## II.

Because the BIA affirmed without opinion, this court reviews the IJ's decision directly to determine if substantial evidence supports it, *e.g.*, *Oforji v. Ashcroft*, 354 F.3d 609, 612 (7th Cir. 2003), and must affirm if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). To qualify for asylum, Tolosa bore the burden of showing that she suffered past persecution or has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *Ememe v. Ashcroft*, 358 F.3d 446, 450 (7th Cir. 2004). A petitioner's experience of past persecution gives rise to a rebuttable presumption that she will face future persecution. 8 C.F.R. § 208.13(b)(1)(i); *see, e.g.*, *Oforji*, 354 F.3d at 613.

Tolosa first argues that the IJ erroneously discredited her testimony. She claims that the reasons the IJ gave for discrediting her—that in her asylum application she failed to describe the interrogations she endured after her father's departure and that she misidentified the soldiers who took her father as members of the EPLF instead of the governing EPRDF—are not supported by the record. This court gives great deference to an IJ's credibility determinations, which will be overturned only in "extraordinary circumstances" as long as they are supported by "cogent reasons" that "bear a legitimate nexus to the finding." *See Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003) (citation and internal quotations omitted). Adverse credibility determinations unsupported by evidence in the record, however, are reversible. *See Uwase v. Ashcroft*, 349 F.3d 1039, 1042-43 (7th Cir. 2003); *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

The IJ's claim that Tolosa's asylum application did not mention her interrogations is contradicted by the applica-

tion itself. In it she recounted that after her father left, authorities brought her "to the station . . . grilled [her] for hours, . . . call[ed] [her] in a demeaning way as a bastard of Oromo and Eritrea, and slapped [her] in [her] face and threatened [her] with further violence." Thus, the supposed discrepancy between Tolosa's application and her testimony does not exist—both in her application and at her hearing she described being detained, interrogated, and beaten by authorities curious about her father's whereabouts. *See Korniejew v. Ashcroft*, 371 F.3d 377, 386 (7th Cir. 2004) (noting "increasing reliance by the BIA and IJs upon *perceived* inconsistencies in testimony") (emphasis in original). While Tolosa may have testified at the hearing in more detail than in her application, such a minor discrepancy is insufficient to warrant discrediting her testimony. *See Uwase*, 349 F.3d at 1042-43. In short, the IJ's finding that Tolosa's story was incredible because her asylum application did not include information about her interrogations has no support in the record and thus cannot be upheld. *See id.* at 1042-43; *Gao*, 299 F.3d at 272.

Likewise, Tolosa's isolated references to "EPLF" instead of "EPRDF" do not provide a cogent reason to discredit her. It is true that several times during the hearing she referred to the "EPLF," but she clarified that she was referring to the "military of the government," which in fact was the EPRDF. She also properly identified the officers who took her father from their home as "EPRDF soldiers." The IJ overstated the significance of the EPLF references; regardless of whether they are attributed to a mistranslation or a simple mistake, they do not justify rejecting Tolosa's otherwise consistent testimony. *See Georgis v. Ashcroft*, 328 F.3d 962, 968 (7th Cir. 2003); *Uwase*, 349 F.3d at 1042-43; *Ememe*, 358 F.3d at 452-53; *see also Korniejew*, 371 F.3d at 387 ("[A]dverse credibility determinations should not be grounded in trivial details or easily explained discrepancies.").

Notwithstanding our rejection of the IJ's credibility determination, Tolosa still must confront the IJ's purportedly independent conclusion that even if her testimony were credible, she did not prove past persecution or a well-founded fear of future persecution "on account of" her Oromo ethnicity. The petitioner bears the burden of demonstrating persecution motivated by one of the protected grounds—in Tolosa's case, her Oromo ethnicity. *See Elias-Zacarias*, 502 U.S. at 481; *Tamas-Mercea v. Reno*, 222 F.3d 417, 425-26 (7th Cir. 2000). Tolosa contends, and we agree, that the IJ overlooked evidence in the record tying both her own and her father's treatment to their Oromo ethnicity. The IJ noted that it was not "all together clear from the evidence" that Tolosa's father was detained because he is Oromo. Instead the IJ speculated that the father may have been detained because he participated in human rights abuses during his military service under Mengistu, "or for other reasons" (we are left to guess as to what those reasons would be). But once the IJ accepted Gabriel's testimony as "completely credible" he could not discount Gabriel's view that Tolosa's father was detained as part of the EPRDF government's campaign to harass and arrest Oromo intellectuals and leaders. Nor could the IJ ignore Gabriel's testimony that the arrests could not be attributed to Tolosa's father's military service because he was not a member of the "Derg"—the political party suspected of human rights abuses under Mengistu.

The IJ also failed to address other evidence in the record linking Tolosa and her family's treatment to their Oromo ethnicity. First, in her asylum application Tolosa details the interrogations after her father left for Kenya and explains that authorities asked her mother if her father had joined the OLF. Her application also recounts that the questions the soldiers directed at her and her siblings "were very humiliating and insulting to our ethnic origin." And the application describes how one interrogator called her "in a demeaning way as bastard of Oromo and Eritrea." The IJ

failed to acknowledge these details, an oversight that is unsurprising given his erroneous statement in his credibility finding that Tolosa never mentioned the interrogations in her application. Moreover, at the hearing Tolosa testified that government interrogators questioned her about the OLF and accused her of wanting to overthrow the government. This testimony, also ignored by the IJ, suggests that government officials imputed her father's support for the rights of the Oromo to her. *See Ahmed v. Ashcroft*, 348 F.3d 611, 617 (7th Cir. 2003) (asylum applicant may show that persecutor imputed a political opinion to her).

Given this evidence in the record, we cannot countenance the IJ's conclusion that Tolosa failed to demonstrate persecution on account of her ethnicity. We are also at a loss to understand the IJ's reliance on certain irrelevant considerations to buttress his conclusion—that, for instance, Tolosa had not proven that she or her family were "persecuted during the regime of either Haile Selassie or Mengistu" (both she and Gabriel testified that it is the EPRDF government that is hostile to the Oromo), and that she had not "adequately addressed the issue of internal relocation." The significance of these supposed shortcomings eludes us and further undermines our confidence in the IJ's decision. *See Niam v. Ashcroft*, 354 F.3d 652, 657 (7th Cir. 2004) (vacating and remanding when IJ's errors "deprive[d] the order of removal of a rational basis"); *Lian v. Ashcroft*, 379 F.3d 457, 459 (7th Cir. 2004) (vacating and remanding claim for relief under Convention Against Torture when "most of" IJ's opinion "taken up with irrelevancies"); *Hengan v. INS*, 79 F.3d 60, 63 (7th Cir. 1996) (vacating and remanding denial of asylum where IJ's focus on facts irrelevant to petitioner's claim suggested that IJ misunderstood arguments altogether).

In sum, the BIA's final order of removal upholding the IJ's denial of Tolosa's claim must be vacated and remanded so that the IJ may reconsider her claim in light of the record

evidence, which strongly suggests that Tolosa's treatment is attributable to her Oromo ethnicity. *See Lian*, 379 F.3d at 461-62 (remanding because IJ "completely ignored" evidence supporting petitioner's claim). Because the IJ concluded otherwise, he never evaluated whether that treatment amounted to "persecution." Although we leave that question for the IJ to resolve as an initial matter, we note that we have routinely recognized that the type of treatment Tolosa and her family endured—detentions, interrogations, beatings and rape—may qualify as persecution. *See Vladimirova v. Ashcroft*, 377 F.3d 690, 696 (7th Cir. 2004) (collecting cases); *Bace v. Ashcroft*, 352 F.3d 1133, 1138 (7th Cir. 2003).

## III.

For the foregoing reasons, we GRANT the petition for review, VACATE the BIA's order, and REMAND for further proceedings.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*