**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted April 5, 2005[*]
Decided May 5, 2005

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 03-4185

| | |
|---|---|
| ZAKARIA DIOUWARA, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | No. A95-390-939 |
| ALBERTO R. GONZALES, Attorney General of the United States *Respondent.* | |

**O R D E R**

Mauritanian citizen Zakaria Diouwara petitions pro se for review of the Board of Immigration Appeals' summary affirmance of an immigration judge's adverse credibility finding and denial of his application for asylum.  The immigration judge found Diouwara not credible largely because his oral testimony was inconsistent with statements in his written application.  We deny the petition for review.

Diouwara entered the United States in September 2001 on a temporary business visa, and overstayed.  At his asylum hearing, he explained that he did not originally intend to stay, and that he came to "look at the market" for computers,

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

telephones, and copy machines, but that shortly after he arrived, he received information that caused him to fear for his safety if he returned to Mauritania.  He testified that his mother called to say that the police had been to his house looking for him, and that they said they had a "surprise" for him.  She also said that they had arrested his brother.  Diouwara subsequently applied for asylum alleging persecution on the basis of political opinion.

In his asylum application, Diouwara wrote that he feared he would be subject to torture because of his connection to his brother-in-law who was reporting the Mauritanian government's human rights violations to Amnesty International; he also claimed that his entire family was "seen as the enemy of the government due to its connection with Americans."  He did not contend that he himself had engaged in political activity, or been subject to arrest or detention, even in answer to questions on the application that specifically asked about these things.

However, at the hearing before the IJ, he testified that he and his father and all of his brothers were members of Action for Changement, a political party that opposed the government, and that he had been arrested seven times in connection with these activities.  He also insisted that the Mauritanian government's desire to persecute his family arose more from vindictiveness toward his father for political and racial reasons than from his brother-in-law's political activities.  When asked why he had not mentioned his own political involvement or his arrests in his written application, Diouwara said that the friend of his brother-in-law who translated his application left out many details that Diouwara had intended to be included.  Diouwara also said that his brother-in-law's friend assured him that he would be able to explain things in more detail when he went before the immigration court.  Furthermore, Diouwara claimed that he mentioned to an immigrations officer some of the things he left out of the application, but was told to reserve his allegations for court.

The IJ noted the discrepancies between Diouwara's asylum application and his oral testimony and determined that Diouwara was not credible because his explanations for the omissions in the application were not persuasive.  The IJ went on to conclude that, even if Diouwara were credible, he did not meet his burden of establishing his eligibility for asylum.  Among other things, he did not submit any evidence to corroborate his alleged political participation with the Action for Changement organization.  The BIA affirmed this decision in a summary opinion.

Because the BIA did not attempt any independent analysis, we review the IJ's opinion directly.  *Tolosa v. Ashcroft*, 384 F.3d 906, 908 (7th Cir. 2004); *Krouchevski v. Ashcroft*, 344 F.3d 670, 671 (7th Cir. 2003).  Our standard of review is a highly deferential one: we ask whether substantial evidence supports the IJ's determination.  *Tolosa*, 384 F.3d at 908.  We will uphold the IJ's decision as long as

it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), which means that we may not overturn the decision unless no reasonable factfinder could reach the same conclusion, *Krouchevski*, 344 F.3d at 673. Moreover, we give "great deference" to the IJ's judgment in matters of credibility. *Tolosa*, 384 F.3d at 909. We will not disturb a credibility determination if it is supported by "'specific, cogent reasons'" with a "'legitimate nexus to the finding.'" *Krouchevski*, 344 F.3d at 673 (quoting *Ahmad v. INS*, 163 F.3d 457 (7th Cir. 1999)).


In this case, the issue of credibility is decisive. Since it is Diouwara's burden to show that he qualifies for asylum, he must convince the IJ of the truth of his claim; otherwise, his case is doomed, *see Uwase v. Ashcroft*, 349 F.3d 1039, 1042 (7th Cir. 2003); *Krouchevski*, 344 F.3d at 673. Diouwara's discursive brief, however, fails to challenge any of the IJ's findings, except to generally charge that the friend of his brother-in-law who translated his application "did not interpret accurately [his] history." Indeed, he devotes most of his brief to alleging new facts, which in many instances are inconsistent with statements he made in the asylum application and at the hearing.[1] But we may not entertain evidence that is not contained in the administrative record. *See* 8 U.S.C. § 1252(b)(4); *Podio v. INS*, 153 F.3d 506, 511 (7th Cir. 1998).

The IJ's adverse credibility finding is adequately supported by the record. As the IJ noted, there are specific discrepancies between Diouwara's statements in his asylum application and his hearing testimony, namely, the omission in his application of any allegation concerning his own political affiliation or his record of arrests and detentions. Such inconsistencies cannot be considered "trivial," *see Tolosa* at 909; *Capric v. Ashcroft*, 355 F.3d 1075, 1089-90 (7th Cir. 2004) (finding support for an adverse credibility determination in "inconsistencies go[ing] to the heart of [the petitioner's] claim"). Nor can Diouwara's testimony at the hearing be

---

[1]To cite only a few salient examples: he told the IJ that he was arrested for the first time in 1995 when he joined the Action for Changement party, but he now claims to have been arrested as early as 1986; he told the IJ he was only beaten the first time he was arrested and thereafter held briefly without questioning and released, but in his appellate brief he claims to have been interrogated and tortured; Diouwara told the IJ that his father had been sick for two years before he died, but Diouwara now says that his father died within a month of his release from a detention during which he was beaten and starved; and he told the IJ he had taken over his father's business and was making enough money to send the children to private schools, but in his appellate brief he says that the government took all his family's possessions and destroyed his home.

understood as merely amplifying his previous statements, *cf. Ememe v. Ashcroft*, 358 F.3d 446, 453 (7th Cir. 2004). The IJ was entitled to treat "new factual assertions" in that testimony as "substantial evidence that the applicant is not a reliable and truthful witness," *see Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir. 2003). Similarly, given his concerns about Diouwara's credibility, the IJ was entitled to conclude that Diouwara needed to corroborate his claims concerning his own political activity and arrests. *See Capric*, 355 F.3d at 1086.

Because we uphold the IJ's adverse credibility finding, we need not reach his alternative holding that Diouwara failed to establish eligibility for asylum. We DENY the petition.