# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1476

HUI-MEI LI,

*Petitioner*,

v.

ALBERTO R. GONZALES,

*Respondent*.

_____

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A78 299 063

_____

ARGUED JULY 6, 2005—DECIDED AUGUST 1, 2005

_____

Before COFFEY, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Chinese national Hui-Mei Li petitioned for political asylum, claiming that she was sought by the police for cohabiting with her boyfriend and that she feared further persecution if forced to return to China. The Immigration Judge ("IJ") denied her petition, finding her testimony incredible and determining that her allegations, even if true, did not establish that she had asserted a "political opinion" within the meaning of the statutory conditions on eligibility for asylum. *See* 8 U.S.C. §§ 1101(a)(42)(A),

1158(b)(1). The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision, and Ms. Li petitions for review in this court. For the reasons set forth in the following opinion, we deny the petition and affirm the decision of the BIA.

# I
# BACKGROUND

## A. Facts

The administrative record shows that Ms. Li arrived at Chicago's O'Hare International Airport in March 2001 and was arrested for attempting to enter the United States with a fraudulent passport. During her credible-fear interview at the airport, she told an immigration officer that she had left China because the Chinese police wanted to arrest her for living illegally with her boyfriend. The officer referred her to the immigration court. At a master calendar hearing before the IJ, Ms. Li conceded that she was removable and applied for asylum on account of her political opinion.

At her asylum hearing, Ms. Li testified that in 1998, when she was eighteen, she left her parents' rural home in the Fujian province to visit an aunt in the capital city of Fuzhou. There she met a young man and decided to move in with him. She repeatedly characterized this cohabitation as "illegal," A.R. 76, 124, but admitted that she had a "problem" only in the countryside where her parents lived, A.R. 87-88. In Fuzhou, people were "more open-minded." A.R. 87. Ms. Li and her boyfriend wanted to get married and sought a marriage license in 2000, but the license was refused because they both were underage.

The filing of the application for the license apparently drew the authorities' attention to the fact that Ms. Li and her

boyfriend were violating the law. Precisely which authorities were involved is never quite clear from her testimony; according to Ms. Li, after the application was denied, the "Government" began "harassing" the couple, until they became convinced that leaving China was "the only way out." A.R. 83. However, when asked to describe the harassment to which she had been subjected, Ms. Li recounted only one specific instance; while she was "visiting" her parents, "somehow the Government got to know that and they attempted to get [her]." *Id.* Four policemen "showed up near [her parents'] house." *Id.* The police did not find Ms. Li because she was at a neighbor's house across the street at the time.

"[N]othing happened" as a consequence of the officers' visit, as Ms. Li freely admitted; nonetheless, she was "kind of worried that they might get me." A.R. 84. For the next eight months, she attempted to evade the police by moving around from relative to relative. She was certain the police were keeping tabs on her, although she did not explain (during immigration proceedings) the reason for this conviction. For a while, her boyfriend traveled with her, but they eventually separated (again, she did not elaborate). When she departed China, on a flight to Indonesia, Ms. Li was alone.

From Indonesia, Ms. Li flew to Chicago, with a stopover in Japan. She accounted for her arrival in the United States by explaining that a man who approached her in Indonesia had recommended that she seek freedom here. The man was "sympathetic" to her story of "being persecuted in China" and gave her an Indonesian passport bearing a United States visa and an airline ticket to Chicago in exchange for her Chinese passport and some cash. A.R. 85.

Ms. Li's boyfriend never left China. She had communicated with him since coming to the United States—the last

time was five days before her hearing—and she admitted that he had encountered no problems with the authorities. Nevertheless, she insisted that she would have trouble if she were removed to China because she would have to return to the countryside where people are rigidly opposed to cohabitation and have long memories. Moreover, she continued, she was the one who had drawn the attention of the government. She claimed that she would face arrest and imprisonment; however, some of her answers in her asylum application and at her credible-fear interview suggest that she expected to be fined and that she anticipated being imprisoned only because the police were corrupt and because she lacked money to pay them off.

When asked by the IJ why she could not avoid difficulties by living in a big city, Ms. Li said that the "rural people" would find out and "trouble" would "follow" her. A.R. 88. The IJ also asked why she could not mend matters by marrying her boyfriend since they were now both of legal age. She answered that this was impossible because her boyfriend already had another girlfriend, and, in any case, she believed that, if she registered for marriage, permission would be denied because of her "old records." A.R. 105.

## B. Agency Decisions

The IJ found Ms. Li ineligible for asylum because her "statements [were] not credible." A.R. 47. He specifically stated that he disbelieved her allegations that she had sought a marriage license and had cohabited with her boyfriend. Moreover, he doubted that she would have been persecuted by governmental authorities if she had done these things. The IJ considered the entire story an artifice in order to obtain admission to the United States and stated that he believed that her real purpose in coming was to seek

economic opportunities. A.R. 52. Furthermore, he found that she failed to allege a qualifying "political opinion" as the basis for her asylum claim. A.R. 42; 8 U.S.C. § 1101(a)(42)(A).

The BIA affirmed the IJ's decision without opinion.

## II

## DISCUSSION

### A. Legal Standards

Because the BIA issued a summary affirmance, we review the IJ's decision as if it were the BIA's. *Huang v. Gonzales*, 403 F.3d 945, 948 (7th Cir. 2005); *Tolosa v. Ashcroft*, 384 F.3d 906, 908 (7th Cir. 2004). Ms. Li's application for asylum included pro forma claims for withholding of removal and for protection under the Convention Against Torture, but because neither her brief before the BIA nor her petition in this court addresses the IJ's findings on these claims, our discussion will be confined to the asylum claim. *Huang*, 403 F.3d at 951.

To qualify for asylum on account of political opinion, Ms. Li must show that she suffered past persecution (which gives rise to a rebuttable presumption that she will suffer persecution if forced to return to China), or that, for some other reason, she has a well-founded fear of future persecution because of her political opinions. 8 U.S.C. § 1101(a)(42)(A); *Tolosa*, 384 F.3d at 908.

The standard of review is substantial evidence. *Huang*, 403 F.3d at 948. We must uphold the IJ's decision as long as it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Tolosa*, 384 F.3d at 908 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481

(1992)). This means that the decision cannot be overturned unless the evidence compels us to a conclusion contrary to that of the BIA. *See* 8 U.S.C. § 1252(b)(4)(B); *Diallo v. Ashcroft*, 381 F.3d 687, 698 (7th Cir. 2004).

## B. Merits

Ms. Li devotes the greater part of her brief to challenging the IJ's adverse credibility determination, but we need not address that issue because the IJ's alternative holding—that Ms. Li failed to show persecution on account of a political opinion—is dispositive. Even if Ms. Li prevailed on her challenge to the adverse credibility determination, we still would be compelled to agree with the IJ that Ms. Li's allegations do not constitute persecution on account of political opinion as a matter of law.

Ms. Li claims that the IJ misunderstood the nature of her allegations. The IJ regarded her as "a young lady who wanted to apply for a marriage license knowing that she was under age," A.R. 42, whereas she insists that the "core issue" is that "she wanted [to] and did cohabit with a young man outside of matrimony," Petitioner's Br. at 17. We do not see how this shift in emphasis makes any difference with respect to demonstrating that the IJ erred in concluding that she was not persecuted on account of *political opinion*.

A political opinion is one that is expressed through political activities or through some sort of speech in the political arena. *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir. 1997); *see also Marku v. Ashcroft*, 380 F.3d 982, 987 (6th Cir. 2004); *cf. Diallo*, 381 F.3d at 691 (assuming requisite political opinion where petitioner "did not pass out political leaflets or brochures and did not speak at political rallies, but he did support the organization monetarily . . . and did not hide his support"); *Bace v. Ashcroft*, 352 F.3d 1133, 1138 (7th Cir.

2003) (finding political opinion where petitioner refused to certify a vote and his assailants indicated that they were retaliating for the refusal). Ms. Li does not claim that she ever publicly expressed her opposition to the government's policy on cohabitation, nor did she, as far as the record shows, give the government any reason to believe that she would do so in the future.

Moreover, even if she were able to show that she held a political opinion, Ms. Li would still fail to meet her burden of proof that she was persecuted "*on account of*" that opinion. *Elias-Zacarias*, 502 U.S. at 482 (emphasis in original); *Capric v. Ashcroft*, 355 F.3d 1075, 1093 (7th Cir. 2004). She points to no evidence of the government's motive. *See Elias-Zacarias*, 502 U.S. at 483; *Tolosa*, 384 F.3d at 909; *Tamas-Mercea v. Reno*, 222 F.3d 417, 425-26 (7th Cir. 2000). We do not expect that asylum applicants will always be able to offer direct proof; but the petitioner must produce "*some* evidence" that the government was motivated by a desire to suppress her political opinion. *Elias-Zacarias*, 502 U.S. at 483 (emphasis in original); *see also Marku*, 380 F.3d at 987. We see no basis in this record for an inference that the government sought Ms. Li for any other purpose than to secure her compliance with a certain code of conduct required under the country's domestic law.

Finally, Ms. Li fails to demonstrate that she has been persecuted, on account of political opinion or otherwise. Her allegations simply do not rise to the level of severity required. *See Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (noting that "persecution" must be more than mere harassment); *Capric*, 355 F.3d at 1084 (same). Ms. Li's family was visited once by police officers, and there were no repercussions. She does not even contend that she was threatened with specific harms.

Ms. Li's allegations are not enough to constitute past persecution, nor do they provide a sufficient basis for a well-founded fear of future persecution. The fact that Ms. Li fears future encounters with the police because of corruption in their ranks does not strengthen her claim because "generalized conditions of corruption in a country" cannot establish persecution. *Marquez*, 105 F.3d at 381; *see also Capric*, 355 F.3d at 1084; *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996).

Ms. Li bears the burden of persuasion, *Tolosa*, 384 F.3d at 909, and she does not point to anything in the record suggesting that she expressed a political opinion or suffered persecution on account of one. Therefore, we conclude that the IJ's alternative holding is supported by substantial evidence.

## Conclusion

For the reasons given in the foregoing opinion, we deny the petition for review and affirm the decision of the BIA.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*