In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4201

VIOLETA SHTARO,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A 95 403 012

ARGUED AUGUST 3, 2005—DECIDED JANUARY 24, 2006

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Albanian citizen Violeta Shtaro seeks review of the Board of Immigration Appeals' ("BIA") removal order summarily affirming the Immigration Judge's ("IJ") decision to deny her eligibility for asylum on the ground that her testimony was not credible. We conclude that the IJ's decision is not supported by substantial evidence and therefore grant Shtaro's petition.

## I.

Shtaro entered the United States in March 2001 under a Slovenian passport in someone else's name. A year later she petitioned for asylum, withholding of removal, and protec-

tion under the Convention Against Torture, claiming that she was persecuted on account of her political opinion. The INS denied her petition, and she was issued a Notice to Appear charging her with removability for entering the country without valid documentation. *See* INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A).

At her hearing before the IJ, Shtaro testified that she had participated in local politics in the city of Vlora for a number of years. She became an "active supporter" of the Democratic Party in 1992 while still a student, and joined the Party officially in 1995. In February 2000, she was chosen by the Party's leadership to serve as secretary to the Party Chairman. In that position her duties included handling correspondence for the Chairman, helping to prepare his speeches, and reading party platforms aloud for television and radio broadcasts.

Shtaro testified that her troubles began in May 2000, when she was approached by two members of the civil police. They told her that she was going to be a polling commissioner for the October local elections and offered her a bribe of $5,000 to certify the results in favor of the Socialist Party. Shtaro refused the offer and reported the incident to the Democratic Party Chairman, but she continued to receive anonymous letters threatening her with "hard days" if she did not change her mind.

Later that month, shortly before a Democratic Party rally that she helped to organize, Shtaro received an anonymous letter warning her to "disappear from the city" if she "want[ed] to live." On the evening of the rally itself, her home was burglarized; among the items stolen were cash, jewelry, and a number of "personal documents," including wedding photographs. Shtaro and her husband did not report the burglary because they believed the police were involved and feared reprisal. Their decision to "stay quiet" was reinforced on the following day when she heard that

the Socialists had killed a "friend" of hers, a journalist "with democratic belie[f]s."

Shtaro testified that she continued to work for the Democratic Party, and was in fact selected as one of the polling commissioners for the October elections. During the voting, she noticed a number of "irregularities," which she reported to the Democratic Party Chairman. She refused to certify the tainted election results, even though a police officer monitoring the polling place warned her that the refusal would endanger her life.

When the news broke that the Socialist Party had prevailed in the election, "supporters of the Democratic Party" took to the streets in protest, but they were admonished by Party leadership to do so peacefully. Ten days later, according to Shtaro, she received another letter warning her to leave the city; the arrival of this letter coincided with the explosion of a bomb in front of her husband's grocery store. Shtaro then went to stay with an uncle in a small village to distance herself from the political furor in Vlora. She returned to Vlora at Christmastime, hoping that "the story would have been forgotten."

Apparently, it was not. Shtaro testified that she returned to work as secretary for the Democratic Party Chairman in January 2001. On March 2, 2001, on her way home from work, she was abducted by three armed men, who showed her police IDs and took her to the police station where they verbally abused and beat her. At that time, Shtaro was several months pregnant. A few hours later, the police told her they would bring her home, but Shtaro claimed that they took her instead into the Soda Forest (where her journalist-friend had been killed) and took turns raping her. When they finally did take her home, they warned her not to talk with any journalists or she would "really see what it means to suffer."

Shtaro claimed that she knew she was being punished for her refusal to certify the election returns because during

her detention the police made comments such as, "do you see, you bitch, because you didn't sign, that's what is happening," and "[y]ou bitch would rather be massacred than sign a piece of paper!" She also reported that during the drive to the Soda Forest, one of the men opened a folder and showed her the wedding pictures that had been stolen from her home the previous May. He told her that he would keep the pictures "to look at . . . every time I miss you."

In support of her testimony, Shtaro submitted a number of documents, including letters from both the former and the current Chairman of the Democratic Party, confirming her employment with the Party; copies of her employment contracts; two affidavits from the doctor who treated her after she was beaten and raped; and a police report purporting to certify that she had been "arrested" on March 2, 2001, for "participation in the meetings organized by the Democratic Party."

The IJ rejected Shtaro's testimony "standing alone" as a basis for asylum, because he did not believe that she would have been detained, beaten, and raped almost five months after refusing to help fix an election that the Socialist Party won anyway. He also rejected her attempts to corroborate her claims, finding her story "inconsistent" with a State Department country profile and her own documentary evidence. The IJ added that her supporting documents were so inconsistent and unreliable that they not only failed to corroborate but "actually impeached" her narrative account. Thus, though he credited her claim that she had been secretary to the previous Democratic Party Chairman, he found that Shtaro "failed to establish anything more than that." The BIA affirmed the IJ's decision without opinion.

## II.

Because the BIA summarily affirmed the IJ's decision, we review that decision as if it were the BIA's. *Dong v. Gonzales*, 421 F.3d 573, 577 (7th Cir. 2005); *Li v. Gonzales*, 416 F.3d 681, 684 (7th Cir. 2005). Our review is for substantial evidence. *Chen v. Gonzales*, 420 F.3d 707, 709 (7th Cir. 2005); *Li*, 416 F.3d at 684. We must uphold the IJ's decision unless the evidence compels us to a conclusion contrary to the BIA's, 8 U.S.C. § 1252(b)(4)(B); *Li*, 416 F.3d at 684; *Diallo v. Ashcroft*, 381 F.3d 687, 698 (7th Cir. 2004).

In matters of credibility, we owe "great deference" to the IJ's judgment and will uphold an adverse credibility determination as long as it is supported by "specific, cogent reasons" with a "legitimate nexus to the finding." *Dong*, 421 F.3d at 577 (internal citation and quotation omitted); *see also Hysi v. Gonzales*, 411 F.3d 847, 852 (7th Cir. 2005). However, we will not defer to findings not supported by evidence in the record. *Dong*, 421 F.3d at 577-78; *Korniejew v. Ashcroft*, 371 F.3d 377, 383 (7th Cir. 2004); *Uwase v. Ashcroft*, 349 F.3d 1039, 1043 (7th Cir. 2003).

On appeal Shtaro's principal argument is that the IJ's credibility determination is not supported by substantial evidence because his reasoning is speculative, illogical, or otherwise not cogent. We address her challenges to each of the IJ's four grounds for decision.

### A.  Implausible Testimony

Shtaro first contends generally that the IJ erred in finding her testimony implausible because his skepticism has no basis in the record. We agree. An IJ may not base an adverse credibility determination on conjecture or speculation, *see Hor v. Gonzales*, 421 F.3d 497, 500 (7th Cir. 2005); *Chen*, 420 F.3d at 710; *Uwase*, 349 F.3d at 1042; or on "'personal beliefs or some perceived common knowledge,'"

*Dong*, 421 F.3d at 577 (quoting *Huang v. Gonzales*, 403 F.3d 945, 949 (7th Cir. 2005)). The IJ gave four different reasons for rejecting Shtaro's testimony. He "[did] not believe" (1) that she would be targeted for a bribe *before* her official appointment to the election commission; (2) that her position as election commissioner (or party secretary) was important enough for her to be "singled out" for persecution; (3) that the Socialists would be interested in persecuting her in any case since her refusal to cooperate did not cause them to lose the election; and (4) that they would bear a grudge for five months after the elections. But the IJ points to no evidence to support these assumptions about the motivations of Shtaro's alleged persecutors, and her story is not so inherently improbable that we can uphold the IJ's decision without such evidence. *Cf. Bace v. Ashcroft*, 352 F.3d 1133, 1138-39 (7th Cir. 2003) (holding that there was "ample evidence" that Albanian Democrat was persecuted on account of political opinion after he refused to certify fraudulent election returns in 1998). *See also Hor*, 421 F.3d at 499-500 (remanding case involving adverse credibility determination, in part because IJ relied on unsubstantiated assumption that petitioner's alleged persecutors would have attacked him, if at all, " 'long before five months [had] passed' ").

## B.  Inconsistency With State Department Profile

Shtaro next argues that the IJ erred in discrediting her testimony on the ground that it was "inconsistent" with a contemporaneous State Department country profile. She cites our decision in *Bace*, 352 F.3d at 1139, for the proposition that "specific events of an applicant's testimony cannot be 'contradicted' by a generalized State Department country report." To the extent she suggests that the IJ's use of the profile was wholly foreclosed by our precedent, she is incorrect; the error we identified in *Bace* was that the IJ's

"entire finding" against the petitioners rested on a broad observation in the country profile that political persecution of individuals in Albania was rare. *Id.* at 1141. Here the IJ did not rely exclusively on the country profile. Nonetheless, we agree that there is no basis for the IJ's finding that the profile was inconsistent with Shtaro's testimony. Nothing in the profile contradicts any aspect of her recital of the events in Vlora; moreover, its statement that the October 2000 election involved little violence nationwide despite assertions of voting irregularities actually corroborates her account of manipulated election returns followed by "peaceful" protests.

### C. "Inconsistent" Documentary Submissions

Shtaro also contests the IJ's finding that her testimony was inconsistent with the letter from the current Democratic Party Chairman, confirming the period of her employment with the Party, and the letters from the doctor who treated her after the March 2 attacks. The IJ disbelieved that any rape occurred because no rape was mentioned in either the Chairman's letter (which stated that Shtaro told the Party she was leaving her job because of complications with her pregnancy, without ascribing them to rape), or the doctor's letters. But adverse credibility determinations may not be based on minor discrepancies that are easily explained, *see Tolosa v. Ashcroft*, 384 F.3d 906, 909 (7th Cir. 2004), and the IJ did not attempt to ascertain whether these omissions could be accounted for. *See Uwase*, 349 F.3d at 1042-43 (holding that failure to explore "possible explanations" for an inconsistency "cast[s] doubt on [the IJ's] credibility determination"). Shtaro should not have been discredited simply because she did not tell her employer that she was raped. *Cf. Kebede v. Ashcroft,* 366 F.3d 808, 811 (9th Cir. 2004) ("victim of sexual assault does not irredeemably compromise his or her credibility by failing to

report the assault at the first opportunity"). Nor should the doctor's letters have been discounted as "inconsistent" absent any showing that her failure to specify the origin of Shtaro's injuries was significant. *See Hor*, 421 F.3d at 500 (psychiatrist's failure to mention terrorist incident as cause of alien's post-traumatic stress syndrome was not "reasoned basis" for adverse credibility determination).

### D. "Unreliable" Documentary Submissions

Finally, Shtaro contends that the IJ inappropriately discredited her testimony because he suspected that her documents were fraudulent. He specifically found that she falsified the police report purporting to certify that she was "arrested" on March 2 and the copies of her employment contracts, and impugned the rest of her documents generally because she did not authenticate them in the manner described in 8 C.F.R. § 287.6. The IJ also inferred that because she used fraudulent documents to enter the United States and did not seek asylum for approximately a year, her "documentation and claim may . . . be fraudulent." We agree with Shtaro that none of these considerations is an adequate basis for an adverse credibility determination.

If there was legitimate reason to think that Shtaro submitted fraudulent documents, the IJ would have been entitled to disbelieve her. *See Hysi*, 411 F.3d at 852-53; *Kourski v. Ashcroft*, 355 F.3d 1038, 1040 (7th Cir. 2004). But his skepticism concerning the police report and the employment contracts is not supported by substantial evidence. The IJ did not explain why he doubted that the police would be willing to "issue a letter at the respondent's request" if her story was true. And we cannot see why he thought Shtaro's voluntary admission that she signed the copies of her employment contracts upon receiving them in the United States "undercut the reliability of her other evidence."

Nor can we uphold the IJ's decision upon his grounds for impeaching the authenticity of her documents generally. The IJ points out that Shtaro did not authenticate her documents in the manner specified in 8 C.F.R. § 287.6. But failure to so authenticate does not amount to presumptive proof of falsity. *See Leia v. Ashcroft*, 393 F.3d 427, 434 (3d Cir. 2005); *Shire v. Ashcroft*, 388 F.3d 1288, 1299 (9th Cir. 2004); *Georgis v. Ashcroft*, 328 F.3d 962, 969 (7th Cir. 2003). We have also rejected the idea that an alien may be found incredible simply because she used a false passport, *see Dong*, 421 F.3d at 578-79; *see also Yongo v. INS*, 355 F.3d 27, 33 (1st Cir. 2004). And even if we were satisfied that Shtaro's delay in applying for asylum was probative with respect to her claims, *see Dong*, 421 F.3d at 579, it would not be sufficient in itself to support the adverse credibility finding. *See Georgis*, 328 F.3d at 970 (remanding where only one out of six reasons given by IJ for denying petition was supported by substantial evidence).

Bearing in mind that a credibility analysis requires only that the petitioner's claim be internally consistent, detailed, and plausible, *see Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004), we conclude that the IJ's adverse credibility determination is not supported by substantial evidence. "A credibility analysis should not be confused with a burden of proof analysis, which considers and weighs all the surrounding evidence." *Id.*

## III.  Conclusion

We GRANT the petition for review and REMAND the case for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*