

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2006

# Jiang v. BCIS

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2638

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Jiang v. BCIS" (2006). *2006 Decisions.* Paper 1274.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1274

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2638

———

JING XI JIANG,
                              Petitioner

v.

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES

———

On Petition for Review from the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A77 354 182)

———

Argued March 29, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, Circuit Judges.

(Filed April 12, 2006)

Theodore N. Cox
Joshua E. Bardavid (Argued)
401 Broadway, Suite 701
New York, NY 10013
          Counsel for Petitioner

Peter D. Keisler, Assistant Attorney General, Civil Division
Katherine A. Carey, Trial Attorney, Torts Branch (Argued)
U.S. Department of Justice
P.O. Box 888, Ben Franklin Station
Washington, DC 20044
          Counsel for Respondent

VAN ANTWERPEN, <u>Circuit Judge</u>.

Petitioner Jing Xi Jiang is a native and citizen of the People's Republic of China. He petitions for review of the April 25, 2005 Order of the Board of Immigration Appeals ("BIA") denying his claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). We will grant his petition for the reasons set forth below.

I

Jiang entered the United States at Los Angeles on April 7, 2001 without a visa, and was subsequently charged with removability. On May 29, 2001, he submitted an asylum application. At a February 20, 2002 hearing before an Immigration Judge ("IJ"), Jiang conceded removability but indicated that he would pursue asylum, withholding of removal, and relief under the CAT. At his December 19, 2002 merits hearing, Jiang was the sole witness. Jiang's claims were based on his testimony that Chinese authorities forced his wife to have an abortion and to submit to insertion of an intrauterine device ("IUD"), as well as his belief that he would be fined and incarcerated if he returned to China. A summary of the facts Jiang sought to establish follows.

Jiang married Dong Juanlan in China on March 27, 1997, and the couple had a son on December 23, 1997. A month later, authorities forced his wife to have an IUD inserted. Their son fell seriously ill in February 1998, and though he recovered, he failed

to thrive. At age two, he could not speak or walk. Wishing to have another child, the couple paid a private doctor to remove the IUD illegally, and in February 2000, Juanlan was pregnant again. She hid from family planning officials at her aunt's house; when she failed to appear for a medical exam, authorities notified Jiang that *he* was required to undergo a sterilization procedure. Rather than submit, Jiang joined his wife in hiding. In August 2000, their son was hospitalized for pneumonia. The couple went to stay with him at the hospital, where they attempted to maintain a low profile by remaining in their son's room.

Their efforts to remain anonymous unraveled on the morning of August 6, 2000, their second day at the hospital. When Juanlan left the room to get some warm water to wash up with, family planning officials who happened to be at the hospital spotted her and apprehended her. They immediately forced her to undergo an abortion, and to submit to insertion of a new IUD. Jiang learned what had happened from a nurse. The next day, someone orally notified him that he was liable for a 3,000 RMB fine for violation of the family planning policy, which he paid. Jiang remained in China until April 2001, when he came to the United States. As related above, he became subject to the current proceedings soon thereafter.

Following his merits hearing in Immigration Court in Philadelphia, Pennsylvania, the IJ issued a written decision dated January 20, 2005 denying Jiang's asylum, withholding, and CAT claims, and ordering him removed to China. The IJ concluded that inconsistencies and implausibilities in Jiang's testimony rendered him not credible, and that he had not corroborated parts of his testimony. Jiang appealed to the BIA, which

affirmed without opinion in an April 25, 2005 Order pursuant to 8 C.F.R. § 1003.1(e)(4).

## II

Jiang filed a timely petition for review in this Court, which has jurisdiction under 8 U.S.C. § 1252(a)(1). Where the BIA summarily affirms an order of the IJ, the Court of Appeals reviews the IJ's decision as if it had been rendered by the BIA. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). We review findings of fact, including adverse credibility determinations, for substantial evidence. Id. at 272. "Under this standard, the . . . adverse credibility determination must be upheld on review unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). With respect to asylum and withholding, "[w]hether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination . . ." also reviewed for substantial evidence. Id. We likewise review the denial of CAT relief for substantial evidence. Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

## III

Jiang advances three sets of claims. First, he argues that substantial evidence did not support the IJ's adverse credibility determination; second, that substantial evidence did not support the denial of asylum and withholding of removal, and third, that substantial evidence did not support the denial of CAT relief. Concluding that the IJ's credibility determination lacked substantial evidence, we will grant the petition.

## A

Although we will defer on questions of credibility, the IJ must provide "specific,

cogent reasons" for the finding. Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (quoting Gao, 299 F.3d at 276). "We look at an adverse credibility determination to ensure that it was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony in view of the background evidence on country conditions." Id. (citation, quotations marks, and ellipsis omitted). Thus, adverse credibility determinations based merely on "speculation or conjecture" cannot stand. Id. (quoting Gao, 299 F.3d at 272). The discrepancies that form the basis of an adverse credibility determination must go to the heart of the alien's claim. Gao, 299 F.3d at 272 (citing Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir. 1990)). In the present case, the various aspects of the IJ's credibility determination are either speculative, trifling, or fail to reach the heart of Jiang's claim. We treat them seriatim on our way to the necessary conclusion that Jiang's petition must be granted.

The IJ first took issue with a number of supporting documents offered by Jiang, including his household registration. Jiang testified that his wife had conveyed the documents to him through a friend and fellow villager who was traveling in the United States. This friend called Jiang on his cell phone at his job in Pennsylvania, and arranged a meeting with Jiang in Chinatown in New York City to give him the documents. Jiang testified that he had not met the friend before, and did not know his name. Expressing some suspicion that Jiang had obtained the documents fraudulently, the IJ noted that "the one person who played a key role in . . . the chain of custody of these documents, is an individual whom the respondent did not inquire as to his name or identity other than learning that he was a friend of his wife." The IJ did not, however, go so far as to find

-5-

that the documents were fraudulent. Nor would he clearly have had a basis to do so on this record. In the absence of a finding that the documents were falsified, the IJ's use of the documents *against* Jiang's credibility amounts to speculation. See Dia, 353 F.3d at 249 (speculation an impermissible basis for adverse credibility determinations); see also, Shtaro v. Gonzales, 435 F.3d 711, 716-17 (7th Cir. 2006) (mere skepticism as to authenticity of documents, absent proper finding of fraud, not adequate to support adverse credibility determination). The IJ also did not establish how the documents and any problems they raise would go to the heart of Jiang's claim that he suffered past persecution as a result of the abortion and IUD insertion Chinese authorities forced on his wife. We reject the IJ's use of the documents to subvert Jiang's claim.

The IJ also noted that Jiang's household registration listing him and his wife as members of the same household, was issued on May 15, 2001 – after he had left China. The IJ concluded that it was implausible for authorities to issue the registration at a time when Jiang, whom it listed as the head of the household, was unavailable. We cannot identify a grounding in substantial evidence for this conclusion. Rather, we again note that the IJ impermissibly speculated, this time in concluding that Chinese authorities would not issue a fairly commonplace household registration without Jiang actually being present. Because no record evidence supports this conclusion, we cannot defer to it. Cf. Mulanga v. Ashcroft, 349 F.3d 123, 134 (3d Cir. 2003) (quoting Qiu v. Ashcroft, 329 F.3d 140, 154 (2d Cir. 2003), warning against "potentially mistaken, culturally based assumptions about the existence and availability of documents.").

The IJ also appears to have taken issue with Jiang's failure to corroborate some of

-6-

his testimony. "[T]he BIA may sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001) (affording Chevron deference to BIA corroboration rule set forth in In re S-M-J-, 21 I. & N. Dec. 722 (BIA 1997)). In accord with S-M-J- and Abdulai, however, the IJ must render "(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." Id. at 554 (quotation marks omitted). The IJ here plainly failed to perform this analysis. Accordingly, the IJ's unrealized quest for corroboration does not afford a basis on which to conclude that Jiang has failed to meet his burden of proof.

The IJ also cast a jaundiced eye on other parts of Jiang's account, including a 3,000 RMB fine imposed on him for violating family planning regulations that he did not mention in his asylum application, the details of his employment history, and his proper address in China. As with the documents Jiang presented, the IJ gave no sound reason to disbelieve Jiang's account of these aspects of his history. Furthermore, the IJ does not appear to have relied on them in arriving at his adverse credibility determination. Finally, none of these issues impugns the core of his asylum claim. Thus, they do not provide substantial evidence for the IJ's conclusions.

Accordingly, we conclude that the IJ's adverse credibility determination in this

case cannot stand because it is unsupported by substantial evidence.[1]

B

Jiang further challenges the IJ's conclusions that he failed to meet his burden for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and CAT relief, 8 C.F.R. § 208.16(c)(2). Because the faulty adverse credibility determination was the exclusive basis of the denial of asylum and withholding, and clearly considered in the denial of CAT relief, the denials cannot stand. We will vacate the BIA's Order, and remand to that body for proceedings consistent with this opinion.[2] See Liu v. Ashcroft, 372 F.3d 529, 534 (3d Cir. 2004) (citing I.N.S. v. Ventura, 537 U.S. 12 (2002), and stating, "[w]e are obliged to remand to the agency to reconsider and reweigh the facts, rather than attempting to undertake that task ourselves.").

---

[1] While our standard of review is deferential, proceedings in immigration court are not an occasion for ferreting out any possible basis to disbelieve an applicant. See Senathirajah v. I.N.S., 157 F.3d 210, 221 (3d Cir. 1998) ("The procedures for requesting asylum and withholding of deportation are not a search for a justification to deport."). We reiterate, as we have countless times before, that adverse credibility determinations must be supported by substantial evidence. E.g., Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

[2] We note that the IJ's decision, adopted by the BIA when it affirmed without opinion, stated that "[i]f a review of this record were to determine that the respondent should be found eligible as a matter of statute for asylum on a conditional basis, the Court would not otherwise have exercised discretion adversely in this case." We leave the ultimate determination to the agency, as we must, but note that spouses of those forced to undergo coercive abortions or birth control procedures are generally considered to have made out persecution for purposes of asylum. See 8 U.S.C. § 1101(a)(42) (including those "forced to abort a pregnancy or to undergo involuntary sterilization" in definition of "refugee"); Matter of C-Y-Z-, 21 I. & N. Dec. 915 (BIA 1997) (en banc) (past persecution of one spouse can be shown by forced sterilization or abortion of partner spouse).

-8-

IV

We have considered all other arguments made by the parties, and conclude that further discussion is unwarranted. For the foregoing reasons, we will grant the petition.