NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2007
Decided August 24, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-4002

| | |
|---|---|
| XIONG CHEN, | Petition for Review of an Order of |
| *Petitioner,* | the Board of Immigration Appeals |
| *v.* | No. A77 957 265 |
| ALBERTO R. GONZALES, | |
| *Respondent.* | |

**O R D E R**

Xiong Chen, a native and citizen of China, arrived in the United States in 2001. He requested asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming that he was fired from his teaching position because he expressed his political opinion against corrupt government officials and violated Chinese population control policies. He also claimed that his girlfriend was forced to abort her pregnancy. The Immigration Judge denied the requested relief because Chen neither suffered past persecution nor had a reasonable fear of future persecution. Chen appealed, but the Board of Immigration Appeals dismissed the appeal. Because Chen cannot establish past persecution nor a likelihood of future persecution, we deny the petition.

Chen applied for asylum in 2002, several months after arriving in the United States without proper documentation. Because the IJ found Chen credible, the facts to which he testified are undisputed. *See Zhu v. Gonzales*, 465 F.3d 316, 318 (7th Cir. 2006). He testified that he worked as a teacher in a middle school in Fujian province and belonged to the communist party. He entered into an intimate relationship with a student at his school's "senior department," and impregnated her. Chen testified that he and the student had a small, "traditional" marriage ceremony, but they were never legally married because the woman's parents disapproved of their relationship. When the woman told her mother that she had given birth to a child, her mother reported the couple to government authorities for violating the government's birth-control policies.

Several months after the ceremony, Chen was involved in a dispute at the school. The dispute arose when Chen's father witnessed the principal's brother stealing school equipment—an incident that Chen's father reported to school officials. In retaliation the principal's brother assaulted Chen's father, and Chen reported the assault to school authorities. When the principal learned that Chen reported the incident, he suspended Chen from his teaching duties for "slandering" a communist party member as well as violating the government's birth-control policies.

To avoid the authorities, Chen and his girlfriend went into hiding, during which time they conceived another child. When family-planning authorities discovered the second pregnancy, they told Chen's parents that he would be subject to "heightened penalties" unless his girlfriend submitted to an abortion. Two weeks later, the school fired Chen. Because Chen feared the consequences he would face if his girlfriend did not submit to an abortion, he decided to leave China for the United States. Chen has since learned from his parents that his girlfriend was forced to abort her pregnancy.

The IJ determined that Chen failed to establish either past persecution or a well-founded fear of future persecution, and therefore denied his request for asylum, withholding of removal, and relief under CAT. The IJ first concluded that Chen could not show persecution based on the loss of his job. Even if this was a persecutory act, the IJ continued, it was not on account of political opinion because Chen was fired due to the principal's "personal animus" after Chen reported his brother. With regard to the abortion, the IJ noted that Chen and his girlfriend were never legally married and that, while a spouse may be entitled to asylum based on his wife's involuntary abortion, an unmarried boyfriend is not.

The BIA dismissed Chen's appeal.  The BIA noted its recent decision in *Matter of S-L-L-*, 24 I & N Dec. 1 (2006), in which it determined that unmarried aliens requesting asylum based on a partner's coerced abortion qualify for asylum only if they were persecuted for "other resistance" to the birth-control policies, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law."  *Id.* at \*23.  The BIA concluded that Chen had not demonstrated the requisite "other resistance" to the policy.  The BIA also stated that it was not persuaded that Chen's treatment was on account of a protected ground.

In his petition for review Chen first argues that the IJ erred by concluding that he was fired because of a personal dispute with the principal, rather than on account of political opinion.  He contends that the IJ failed to recognize that he was also fired for his role in exposing political corruption—a role he undertook when he reported the principal's brother, a communist party member.

We review the BIA's order for substantial evidence supporting the decision. *Tandia v. Gonzales*, 487 F.3d 1048, 1052 (7th Cir. 2007).  A person is entitled to asylum by demonstrating either past persecution or a well-founded fear of future persecution based on one of several factors including expression of political opinion. 8 U.S.C. § 1101(a)(42)(A).  Aliens must show either that they "publicly expressed" their political opinion through speech in the political arena or that the government had reason to believe they would do so in the future.  *Li v. Gonzales*, 416 F.3d 681, 685 (7th Cir. 2005).

Substantial evidence supports the IJ's decision that Chen did not express a political opinion when he reported the principal's brother.  Chen merely reported the principal's brother to school officials, and we have ruled that reporting misconduct within the chain of command is not an expression of political opinion under § 1101(a)(42)(A).  *Musabelliu v. Gonzales*, 442 F.3d 991, 995-96 (7th Cir. 2006) (ruling that an alien who reported smuggling and theft of public supplies to his superiors "within the chain of command" did not express a political belief because the alien did not take his concerns "to the public in quest of a political decision.")

Chen next contends that the BIA failed to recognize that he was persecuted when the school fired him for resisting China's coercive population control policies–namely by having a child without registering his marriage and then hiding from authorities.  It is true that severe state-sanctioned economic deprivation can constitute persecution, *Medhin v. Ashcroft*, 350 F.3d 685, 689 (7th Cir. 2003), but

Chen alleged only that he was fired from his job, and we have held that being fired from a job, even if it is discriminatory, does not constitute persecution. *Id.; Musabelliu*, 442 F.3d at 994. Although Chen also claims that he was persecuted when family-planning authorities threatened him with "heightened penalties," we have repeatedly held that vague, unfulfilled threats like this one generally do not compel a finding of past persecution. *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003).

Finally, Chen contended at oral argument that the BIA erred in deciding that he did not qualify for asylum as the unmarried boyfriend of a woman who was forced to abort a pregnancy. However, Chen failed to raise this argument in his brief to this court, and it is waived. *Asere v. Gonzales*, 439 F.3d 378, 381 (7th Cir. 2006). Even if we could decide the question, Chen could not prevail. Unmarried boyfriends of women who are forced to have abortions do not qualify as refugees. *See Zhu*, 465 F.3d at 321.

Accordingly, we DENY Chen's petition for review.

ROVNER, *Circuit Judge,* concurring. I agree with the majority's resolution of the issues presented to this court. I write separately only to note that the last sentences of the order are dicta as we determined that the issue is waived. In *Zhang v. Gonzales*, 434 F.3d 993, 999 (7th Cir. 2006), we recognized that the amendment concerning forcible abortions protected spouses where a traditional marriage ceremony had taken place but a legal marriage was not possible because of China's restrictive population control measures. At the other extreme, in *Zhu v. Gonzales*, 465 F.3d 316, 321 (7th Cir. 2006) we recognized that protection did not extend to someone who was a mere boyfriend, where there had been no marriage ceremony of any kind nor even a suggestion that they planned to wed. Chen's situation, had it been properly presented, would have fallen in the middle, as it is undisputed that he had a traditional marriage ceremony, but he did not obtain the stamp of government approval. This court has not yet determined whether a spouse for purposes of protection under the amendment, can include a person who is married in a traditional or religious ceremony, but not legally married. We should decide that only after it is fully briefed and argued, and not in a cursory reference in a case in which it is not raised.